MINITREE C. McFADIN et al., Appellants, v. JOHN W. SIMMS et al.

Division One, July 1, 1925.

1. **QUIETING TITLE: Unknown Heirs: Affidavit: By One Plaintiff.** The word "plaintiff" in the statute (Sec. 580, R. S. 1899) declaring that "if any plaintiff shall allege in his petition, under oath, that there are, or that he believes there are, persons interested in the subject-matter of the petition, whose names he cannot insert therein because they are unknown to him," etc., is used in a collective sense, and includes all persons who by the record prosecute the action; but, nevertheless, said statute does not mean that, where there are more than one plaintiff, the petition must be verified by the oath of each plaintiff. Where one of the plaintiffs in his affidavit to the petition states, in effect, that the heirs, devisees and assigns of a certain person, who by recorded deeds or wills appears to have had some unconveyed interest in the land, are unknown to him and to each of his co-plaintiffs, such affidavit is a compliance with the statute.

McFadin v. Simms.

2. ———: Statute: Constitutional: Impairment of Contract: Remaindermen. The statute (Sec. 650, R. S. 1899) authorizing the court to ascertain and determine the title and interests of the parties in an action against unknown remaindermen, notified only by publication in a newspaper, and brought before the death of the life tenant, wherein it is adjudged that such remaindermen have no estate or interest, does not impair the obligations of existing contracts and is not violative of Section 15' of Article II of the Missouri Constitution. The decree in such case adjudging that "upon the evidence adduced" the plaintiffs were owners of the land "absolutely and in fee simple" and that the defendants had "no title, interest or estate" in the lands, did not invest plaintiffs with a new title, but merely determined what title they already had, and that defendants had none; and although, if defendants had appeared in response to the published notice and offered proof of their title, the finding and judgment might have been different, they are estopped, unless they appeared within the time prescribed by the statute, from asserting that they ever had title as remaindermen.

3. CONSTITUTIONAL QUESTION: Stare Decisis. The statute relating to suits to quiet title having been held to be constitutional by the judgment in the former suit in this case the question of its constitutionality was thereby foreclosed for all purposes of the case.

4. JUDGMENT: Quieting Title: Fraud: Necessary Proof. A judgment in an action to ascertain and determine title to land, brought by constructive notice to unknown parties, will not be set aside upon a mere surmise or suspicion of fraud, but only for actual and positive fraud in fact, established by clear, strong and cogent evidence, leaving no reasonable doubt of its existence.

5. ———: ———: ———: Constructive Notice to Unknown Heirs: False Affidavit. The abstract of title showed that in 1838 Minitree Catron, through the land office at Lexington, had purchased from the Government land in Carroll County and received patents therefor; that in 1865 John McFadin of Lafayette County gave Edward Hamill a bond for a deed, and that in 1867 John McFadin and his wife, Frances Eveline McFadin, of Lafayette County, had executed a warranty deed conveying the lands to Mary A. Simms, but it did not reveal who Catron was or where he at any time resided, or what relationships, if any, the McFadins bore to Catron. Mary A. Simms and her husband went upon the land in 1868, fenced it, built a house and barn, cultivated it and established their home there, and continuously resided there until her death in 1887, and her husband continued in possession until his death in 1901. In 1909, the heirs of Mary A. Simms, having caused the abstract of title to be examined, brought suit to quiet the title, in Carroll County, by constructive notice, against the unknown heirs and

devisees of Catron and Hamill, and judgment was rendered adjudging that "upon the evidence adduced" said plaintiffs were the owners of said lands "absolutely and in fee simple" and that none of the defendants had any "title, interest or estate" in said lands. This is a suit to set aside that judgment, on the alleged ground of the fraud of the plaintiffs practiced upon the court in procuring it. It developed at the trial that Catron was continuously a resident of Lafayette County from 1836 to 1862, and that at his death in 1862 he left a last will by which he devised said lands to his daughter Frances Eveline McFadin "for and during her natural life, and after her death all of such lands shall be equally divided among all her children share and share alike," and the plaintiffs in this case are her surviving children and heirs at law, none of whom appeared to the former suit to quiet title. The said Catron will was duly probated and recorded in Lafayette County, but was never recorded in Carroll County, where the lands lie. The fraud charged is that the plaintiffs in the suit to quiet title, well knowing the plaintiffs in this suit were residents of Lafayette County, and well knowing their rights, title and interest in the land, for the purpose of having process so served as to avoid giving to these plaintiffs actual notice and thereby purposely to keep them in ignorance of the suit and to deprive them of an opportunity to appear and make defense therein, falsely alleged under oath that the names of the heirs and devisees of Catron were unknown to them and that the nature or character of the title, interest or estate which they claimed in the land was unknown to them. There is no proof tending to show that any of the Simms heirs, or their attorney who brought the suit to quiet title, knew of the existence of the Catron will, or the names or whereabouts of the persons named therein as devisees, or had ever known or heard of the McFadins or of their relations to Catron. *Held*, that the alleged fraud is not established by the proof, and the judgment quieting the title cannot be set aside.

6. ———: ———: **Searching Records of Another County.** It is not incumbent upon plaintiffs in a suit to quiet title, who are heirs at law of a grantee in a warranty deed, to go into another county in search of the grantor, in order to inquire of him the source of the title he purported to convey forty years previously, where plaintiffs and said grantee have ever since been in actual possession, and they have every reason to believe the break in the chain of the recorded instruments is but a formal defect resulting from a loss of a deed or failure to record it.

7. ———: ———: **Fraud: Inferring Knowledge from Social Prominence.** Where the will of the patentee devised lands situate in a county other than his residence, to his daughter for life and after her death to her children, and the will was probated and recorded

McFadin v. Simms.

in the county where the testator resided, but at no time was recorded in the county where the lands lie, and said daughter and her husband conveyed them by waranty deed to a grantee who established a home on the lands and whose heirs forty years later and after her death brought suit to quiet title against the unknown heirs of said testator, by constructive notice, an inference that the plaintiffs in such suit knew such daughter and her children cannot be drawn from the fact that they at all times resided in the testator's home county and were there socially prominent and well known, the two counties, though adjoining, being separated by the Missouri River, and no more communication existing between them than between counties remotely separated.

8. ————: ————: Probate of Will: Proceeding in Rem: Constructive Notice. Even though it be admitted that a proceeding to probate a will devising land is a proceeding *in rem*, the doctrine of constructive notice has no application in a suit to set aside a judgment adjudging the heirs of the grantee in a warranty deed to be the owners of land, where they had no knowledge that the grantor had acquired by said will only a life estate. The will having never been probated or recorded in the county where the lands lie, to charge the heirs of the grantee with fraud, in that they falsely stated in their petition under oath that said testator and his heirs were unknown to them, it is necessary to show that they had actual knowledge of the will, or of such facts as would have suggested its probable existence and put a man of ordinary diligence upon inquiry.

9. ————: In Action Quieting Title: Binding upon Unknown Remaindermen. The default judgment in an action to ascertain and determine the title to land, brought, by constructive notice, against unknown heirs and devisees of a former record owner, adjudging that the plaintiffs were the owners "absolutely and in fee simple" and that the defendants had no "title, interest or estate" therein, although said unknown defendants were made remaindermen in the will of such owner, probated and recorded only in another county, and although such will was not presented to the court and no specific finding was made with respect to the claim of defendants as remaindermen, is a final extinguishment of the estates and interests of such defendants and a complete adjudication of their claim as remaindermen under the will to the lands.

10. ————: ————: By Grantees of Life Tenant: Trust Relation: Inurement to Remaindermen. The judgment in favor of plaintiffs in a suit to quiet title, brought by the heirs of the grantee named in a warranty deed, made by the daughter of the record owner of land who had, by will probated and recorded only in another county, devised the lands to said daughter for life and in remainder to her children, and brought against the unknown heirs of such record owner, does

not, because of the *quasi-trust* relation existing between life tenants and remaindermen, inure to said defendants who under said will took as remaindermen. On the contrary, by the judgment adjudging that said heirs were owners in fee simple and that the defendants had no title, interest or estate therein, it was finally determined that there were neither life tenants nor remaindermen, and therefore no such *quasi*-trust relation between the plaintiffs and defendants can be held to exist.

Corpus Juris-Cyc. References: Judgments, 34 C. J., Section 573, p. 360, n. 12; Section 1363, p. 959, n. 27. Quieting Title, 32 Cyc. p. 1346, n. 85, 88; p. 1378, n. 74; p. 1384, n. 19. Wills, 40 Cyc. p. 1374, n. 2.

Appeal from Chariton Circuit Court.—*Hon. Fred Lamb,* Judge.

AFFIRMED.

*John E. Burden* and *Gerson B. Silverman* for appellants.

(1) The trial court erred in failing to apprehend that the will of Minitree Catron, the patent owner of the lands in controversy, who was at his death a resident of Lafayette County, duly proved and probated in and by the Probate Court of said county and recorded in a record book kept in said court for the purpose of recording last wills and testaments, was an adjudication *in rem* by a court of original exclusive jurisdiction, and notice to all the world and conclusive everywhere and upon all persons, of the devises and bequests in said will contained, and of the persons to whom bequeathed, and constituted a link in the chain of title to all lands lying within the boundaries of the State owned by said testator at the time of his death, and that said judicial adjudication was impervious to collateral attack. R. S. 1919, secs. 505, 553, 534; 3 Redfield on Law of Wills (2 Ed.) pp. 56, 63, and note 9; Benoist v. Murrin, 48 Mo. 48; Stowe v. Stowe, 140 Mo. 594; Jourden v. Meier, 31 Mo. 40; 2 Greenleaf on Evidence (12 Ed.) sec. 672, p. 586; Bigelow on Law of Estoppel (2 Ed.) 145; Dilworth v. Rice, 48 Mo. 124. The trial court erred in failing to apprehend the nature

and character of each of the two estates created by said
will, namely, an estate for life in Frances Evaline Mc-
Fadin, and a vested remainder in her children; and also
the relative rights, titles and duties of the persons hold-
ing said estates respectively and that of her heirs, as-
signs and privies. The trial court erroneously held and
decided that the heirs of Mary A. Simms, privies in estate
of the said life tenant, had the legal right and power, by
virtue of Section 650, to institute, during the life of the
life tenant, the action to quiet title to the lands in con-
troversy, and without any title in themselves, other than
that they held under the deed of the life tenant, and could
and did procure a valid judgment without fraud, seven
years before the death of the life tenant, determining
that such remaindermen then living had no right, title
or interest in the said lands, and that said grantees of
the life tenant, plaintiffs in said action, were and are the
owners in fee simple title, and that such judgment was
and is *res adjudicata* binding and valid. The life tenant
or his grantee cannot do any thing to defeat a vested
remainder or to acquire the remainderman's title by a
suit to quiet title without his previous conveyance. All
outstanding titles acquired by the life tenant inure to
the benefit of the remainderman. Tiedeman on Real Prop.
(1 Ed.) p. 318, sec. 400; Peak v. Peak, 228 Mo. 536, 137
Am. St. 65; Allen v. De Groot, 98 Mo. 159, 14 Am. St.
628; Salmon v. Davis, 29 Mo. 176; Hall v. French, 165
Mo. 430; McDonald v. Quick, 139 Mo. 484; Watson v.
Bissell, 27 Mo. 220; Case v. Goodman, 250 Mo. 112;
Bradley v. Goff, 243 Mo. 102; McMurtry v. Fairley, 194
Mo. 512; Aubuchon v. Bender, 44 Mo. 560; Case v. Sipes,
280 Mo. 110; Charles v. Pickens, 214 Mo. 215; De Lash-
mutt v. Teetor, 261 Mo. 413; Fountain v. Starbuck, 209
S. W. 901; Conn. Ins. Co. v. Smith, 117 Mo. 261; Mathews
v. O'Donnell, 289 Mo. 235; 8 Am. & Eng. Ency. Law
(1 Ed.) 647; 2 Pom. Eq. (3 Ed.) secs. 956, 958, p. 1747;
1 Story Eq. sec. 307; Ross v. Presbyterian Church, 272
Mo. 96; Armor v. Frey, 253 Mo. 448. Decrees in probate
undoubtedly operate *in rem*—each decree, admitting a
will to probate, or distributing the property of a decedent

is conclusive of the validity and due execution of the will in the one case, and of the persons entitled to the property of the decedent in the other in so far as it relates to real and personal property within the State; and where a trust is created by the will the record of the will in the probate court is notice of the trust to every one. The law implies notice in such case. Where the mere possession of the thing itself authorizes the court to decide upon it without notice to any individual whatever, it is a proceeding *in rem*, to which all the world are parties; and in every such case the judgment of the court is conclusive evidence and notice against all parties interested, though not brought before the court by process. Such is the nature of a judgment of the probate court in probating a will. (2) The statute, authorizing a copy of a domestic will devising lands to be recorded in the county where the land is situated within six months after probate, is directory and not mandatory—no penalty being attached for a failure to so record it. Wolf v. Brown, 142 Mo. 612; Rodney v. Landon, 104 Mo. 260; Lewis v. City St. Louis, 4 Mo. App. 563; Nichols v. Hobbs, 197 S. W. 258. The law granting the privilege to file a copy of the will in Carroll County affixed no penalty for the failure of minor children and those unborn to file it; and equity will not. State ex inf. v. Bird, 295 Mo. 345; St. Louis County Court v. Sparks, 10 Mo. 117; Price v. Woodford, 43 Mo. 247. Last wills and testaments do not come within the definition of those instruments which are required to be recorded in the office of the recorder of deeds. R. S. 1919, sec. 2198; Mosher v. Bacon, 229 Mo. 357; Nichols v. Hobbs, 197 S. W. 258; Wolf v. Brown, 142 Mo. 612; Lewis v. St. Louis, 4 Mo. App. 563. Frances Evaline McFadin, the life tenant, and Mary A. Simms to whom she sold her interest in the lands in controversy, had actual knowledge and notice of the will of Minitree Catron deceased, and of the probate thereof. Hoge v. Hubb, 94 Mo. 489; Maupin v. Emmons, 47 Mo. 304; Jackson v. Sharp, 9 Johns. (N. Y.) 163, 6 Am. Dec. 267. (3) Wherever two persons stand in a fiduciary relationship, and that relation is

abused at the expense of the confiding party, the person so availing himself of his position will not be permitted to retain the advantage, although the transaction could not have been impeached if no such confidential relation had existed. 2 Pom. Eq. Jur. (3 Ed.) sec. 956, p. 1748; Cooley v. Warren, 53 Mo. 166. Mary A. Simms purchased from the life tenant. The plaintiffs as her heirs were not purchasers for value, but were privies in estate and bound by the estoppel upon the life tenant and her grantees. Stoutimore v. Clark, 70 Mo. 478; Hasenritter v. Kirchhoffer, 79 Mo. 242; Wood v. Trust Co., 265 Mo. 525. (4) The trial court erred in holding that the former judgment was *res adjudicata* and valid. (a) Section 650 requires that where there are persons whose names are unknown to the plaintiff, he must make the proper allegation under oath, and where there are more than one or several plaintiffs, then each plaintiff shall personally make the required oath. Quigley v. Mexico Southern Bank, 80 Mo. 297; Schell v. Leland, 45 Mo. 289; Charles v. Morrow, 99 Mo. 646; Rohrer v. Oder, 124 Mo. 24; Myers v. McRay, 114 Mo. 378; Harness v. Cravens, 126 Mo. 250. "The affidavit in case of unknown defendants should be made by the plaintiff himself, or if there are several plaintiffs, then by all of them." Silvers on Missouri Titles (1 Ed.) sec. 122, p. 384; and notes on pages 475, 435, 436, 437; Taylor's Heirs v. Watkins, 4 B. Monroe (Ky.) 569; Blight's Heirs v. Banks, 6 Mon. (Ky.) 224; Kane v. Rock River Canal Co., 15 Wis. 179, 196; Jeffrey v. Hand, 7 Dana (Ky.) 228. (5) The trial court below committed manifest error in its judgment by determining and finding that the judgment in the suit to quiet title, operated to transfer and vest in the heirs of Mary A. Simms, the holders of an estate *per autre vie* only, the vested estate in remainder of these appellants. Hayti Dev. Co. v. Clayton, 281 Mo. 221. Section 650, Revised Statutes 1899, did not authorize a judgment transferring the title of the defendant to the plaintiff. It effects no affirmative increase in plaintiffs' rights. Powell v. Crow, 204 Mo. 481; Dunavant v. Pemiscot Land & Co., 188 Mo. App. 90; Hayti Dev. Co.

v. Clayton, 281 Mo. 221. The judgment in that suit did not vest in the plaintiffs therein the record title of the ancestor of the alleged unknown heirs or devisees; nor did it vest in them the title of the remaindermen. Hayti Dev. Co. v. Clayton, 281 Mo. 221; Powell v. Crow, 204 Mo. 485; Dunavant v. Cooperage Co., 188 Mo. App. 90; Lockwood v. Meade, 71 Kan. 741. The statute authorizes only the quieting of the title which the parties actually own, and does not authorize its use as an instrument to destroy or appropriate the remainderman's estate. Gray v. Clement, 296 Mo. 497. (6) The trial court erred in determining that the judgment in said case of Simms v. Thompson was fairly procured by the heirs of Mary A. Simms without fraud. (a) No statute remedial or otherwise can be used as an instrument of fraud in the procurement of a judgment. 2 Pomeroy, Eq. Jur. (3 Ed.) sec. 921, p. 1658; Wood v. Rabe, 96 N. Y. 414, 48 Am. Rep. 640; Pomeroy, Eq. Jur. (3 Ed.) sec. 431, p. 712; Mansfield v. Mansfield, 26 Mo. 163. (b) It is as much a positive fraud to assert that which is not known to be true, as to assert what is known not to be true; and where a person makes a false statement, not knowing that it is false, but knowing facts sufficient to put him upon inquiry, he is liable for the consequences, to the same extent as if he had actual knowledge. 6 Wait's Acts & Defenses, p. 813. (c) These appellants and their mother Evaline McFadin were purported to be sued as non-residents, so that the ordinary process of law could not be served upon them within the State; when in truth and fact most of them were then well and widely known residents of La-fayette County, and their residence was known to said heirs of Mary A. Simms, by privity of estate, and their chain of title, and they could have been located by the Simms people within the limits of any day—but no effort whatever to find them was made by the plaintiffs in said title suit, and defendants therein were hindered and prevented from appearing and making defense in said action. Johnson v. Coleman, 23 Wis. 452, 99 Am. Dec. 193.

*Franken & Timmons, Lozier & Morris* and *Conkling & Withers* for respondents.

(1)   The defendants herein, or their grantors or ancestors, were the plaintiffs in the suit to quiet title in Carroll County and were adjudged therein to be the owners in fee simple of said real estate.   The Carroll Circuit Court had full jurisdiction of the parties and the subject-matter; its judgment was not appealed from nor set aside, and is a final adjudication that these plaintiffs had no title to or interest in said lands.   The judgment in the suit to quiet title is *res adjudicata*.   Simms v. Thompson, 291 Mo. 493; Ball v. Woolfolk, 175 Mo. 285; Graton v. Land Co., 189 Mo. 332; Wheeler v. Lumber Co., 193 Mo. 289; Emmert v. Alderidge, 231 Mo. 164; Shemwell v. Betts, 264 Mo. 268; Williams v. City of Hayti, 184 S. W. 473; Craig v. Bright, 213 S. W. 845; Forrest Lumber Co. v. Osceola Land Co., 222 S. W. 398; Case v. Sipes, 280 Mo. 110; Idalia Realty Co. v. Norman, 259 Mo. 619; Boob v. Kier, 246 S. W. 926; Fitzgerald v. De Sota Special Road Dist., 195 S. W. 695; Jennings v. Cherry, 257 S. W. 438; Steele v. Stevenson, 104 Kan. 469.   (a)   The petition and order of publication in the suit to quiet title contained all of the allegations required by statute and gave said court jurisdiction of the unknown descendants and unknown devisees of Minitree Catron.   Secs. 575, 576, 580, 650, R. S. 1899; Simms v. Thompson, 291 Mo. 493; Payne v. Lott, 90 Mo. 691; Wall v. Lumber Co., 175 Mo. 406; Tucker v. Leake, 146 Mo. 428; Cummings v. Brown, 181 Mo. 716; State ex rel. v. Wessell, 237 Mo. 604; Hambel v. Lowry, 264 Mo. 175; Flemming v. Tatum, 232 Mo. 678; Organ v. Bunnell, 184 S. W. 102.   (b)   The allegation in the petition in the suit to quiet title that the unknown descendants and unknown devisees of Minitree Catron are non-residents of the State, is surplusage, and does not nullify the other allegations of the petition.   Simms v. Thompson, 291 Mo. 493; Cruzen v. Stephens, 123 Mo. 344; Winningham v. Trueblood, 149 Mo. 583; Kansas City v. Woerieshoefer, 249 Mo. 22; Burnes v. Burnes, 61 Mo. App. 619; Organ v. Bunnell, 184 S. W. 102.   (c) The petition in the suit to quiet title was verified in strict compliance with the statutes then in force.   Sec. 580,

R. S. 1899, provides for the verification by "any plaintiff." The petition being properly verified and containing all the allegations required to give the court jurisdiction of the unknown descendants and devisees of Minitree Catron, and the publication of notice to such unknown parties being in all respects in conformity with the law, the judgment is a complete bar to this action. Sec. 580, R. S. 1899; Simms v. Thompson, 291 Mo. 519; Stull v. Masilonka, 108 N. W. 166. (d) More than three years having expired since the rendition of the judgment, a petition for review will not lie and no defense available can now be set up as a grounds for setting aside the judgment. Secs. 1532, 1534, R. S. 1919. (e) Rights of remaindermen, whether vested or contingent, can be adjudicated in a suit to quiet title. Sec. 650, R. S. 1899; Simms v. Thompson, 291 Mo. 493; Audsley v. Hale, 261 S. W. 124. (2) The evidence wholly fails to establish that the plaintiffs practiced any fraud upon either the court or the defendants in said proceeding. Before a judgment can be set aside for fraud it must appear by evidence clear and convincing that the judgment was procured by fraud practiced upon the court or upon the defendants which prevented them from making defense. Lieber v. Lieber, 239 Mo. 31; Cantwell v. Johnson, 236 Mo. 574; McDonald v. McDaniel, 242 Mo. 176; Shemwell v. Betts, 264 Mo. 268; Craig v. Bright, 213 S. W. 845; Gallagher v. Chilton, 192 S. W. 409; Simms v. Thompson, 291 Mo. 493; Sisk v. Wilkinson, 265 S. W. 536.

RAGLAND, J.—This suit is a sequel to Simms v. Thompson, reported in 291 Mo. at page 493 and following. Practically the same questions urged in that case are again presented in this. That being an appeal from an order of the circuit court overruling a motion to vacate one of its judgments for error of fact, we were limited to a consideration of such of the questions as could be raised and determined under a writ of error *coram nobis* at common law. The questions which because of such limitations we then declined to consider we will

endeavor to dispose of now. As to the others, there is no necessity for again ploughing the same ground. The statement of facts presently to be made will be shaped accordingly, leaving the opinion in the former case to supply such additional details as may be desired.

Minitree Catron in the year 1836 and from that time on continuously until his death, which occurred on the 13th day of August, 1862, was a resident of Lafayette County, Missouri. In the year 1838 he purchased from the United States, and the United States conveyed to him by patents, three several tracts of land situated in Carroll County, Missouri, which together formed a contiguous body of approximately 160 acres. He left a last will which was duly proved and which with the certificate of probate was thereafter, on the 4th day of September, 1862, duly recorded in the record book kept for that purpose in the office of the Clerk of the Probate Court of Lafayette County. By said will he devised all of said lands to his daughter Frances Eveline McFadin "for and during her natural life, and after her death the said lands to be equally divided among all of her children share and share alike." A copy of the will was never recorded in the Recorder's office of Carroll County.

On the 20th day of November, 1865, John McFadin, husband of Frances Eveline, executed a bond to one Edward Hamill in the penal sum of $2,000, to be void upon the condition: that he, McFadin, execute and deliver to said Hamill "a good and warrantee deed" to the land heretofore referred to, "upon payment of one thousand dollars for which note for nine hundred dollars has been given and one hundred dollars paid in cash." The instrument was recorded in the office of Recorder of Deeds of Carroll County, May 30, 1866. On January 5, 1867, John McFadin and his wife, Frances Eveline, executed a deed containing covenants of general warranty wherein and whereby for a consideration of $1,000 paid to them they purported to convey the same land in fee to Mary A. Simms. The deed was duly recorded in the Recorder's office of Carroll County, June 12, 1867. Both

the bond and deed recited that John McFadin was "of Lafayette County, Missouri."

Mary A. Simms and her husband, John, went on the land which the McFadins purported to convey to them in the early part of 1868. It was then wild and unenclosed—"prairie and hazel brush." They built a house and barn on it, fenced it, put it in cultivation, established their home there. They thereafter during the life of Mary Simms continuously resided on the land, farming and cultivating it. She died intestate on or about November 1, 1887. After her death John Simms, her husband, continued in the possession and control of the land until his death, which occurred May 20, 1901.

In 1909 the heirs of Mary Simms preparatory to offering the land for sale caused an abstract of the title to be made. The abstract so made showed: the entries of the several tracts by Minitree Catron in 1838, as shown by the plat book of entries on file in the Recorder's office of Carroll County; the issuance of patents corresponding to the entries and their record in the General Land Office, as evidenced by certificates of an attorney of Washington, D. C.; the bond executed by John McFadin to Edward Hamill; and the deed from McFadin and wife to Mary A. Simms. There thus appeared two breaks in the record title; there was no conveyance of Catron's legal title and none of Hamill's possible equitable title. The Simms heirs submitted the abstract to an attorney and were advised by him that a suit under the statute to determine and quiet title was necessary. Thereafter a petition was prepared in which the Simms heirs were designated as plaintiffs, and Minitree Catron, "the unknown wife or widow, and the unknown heirs, the unknown descendants, the unknown devisees and the unknown assigns of Minitree Catron," Edward Hamill, and "the unknown wife or widow and the unknown heirs, the unknown descendants, the unknown devisees and the unknown assigns of Edward Hamill," were made defendants. The petition after alleging that plaintiffs

were the owners in fee simple and in the peaceful possession of the land proceeded as follows:

"Plaintiffs further state that the defendants claim some title, interest or estate in said premises adverse to that of plaintiffs the nature or character of said title, interest or estate which defendant or any of them claim cannot be more definitely stated (except as is hereinafter done) because it is unknown to plaintiffs except that it is adverse to plaintiffs.

"Plaintiffs further state that there are persons interested in the subject-matter of this petition whose names plaintiffs cannot insert herein because they are unknown to plaintiffs, said unknown persons being the defendants herein designated and referred to in caption as unknown, to-wit, the unknown wife or widow and the unknown heirs, the unknown descendants, the unknown devisees and the unknown assigns of each of the following named persons respectively: Minitree Catron, Edward Hamill  . . .; that the title, interest or estate which said unknown persons (defendants) claim or might claim in said land or any part thereof, is such as they derived by the statutes of descent and distribution, of dower and homestead of the State of Missouri, by devise, by deed of conveyance or by assignment from said persons respectively, to-wit, Minitree Catron (and) Edward Hamill.  . . .  Plaintiffs cannot further describe the interest of said unknown persons, defendants herein, nor how said interest, if any, was derived, because such is unknown to plaintiffs; and plaintiffs have described herein the right title, interest and estate, if any, in said land of the said unknown defendants and how said interest, title and estate was derived so far as plaintiffs' knowledge extends."

The petition was verified by John W. Simms, one of the plaintiffs, in the following language:

"John W. Simms having been duly sworn states on his own behalf and on behalf of his co-plaintiffs herein that the allegations of the above and foregoing petition are true."

The petition was filed in the office of the Clerk of the Circuit Court of Carroll County, July 22, 1909. An order of publication based thereon, directed to the non-resident and the unknown defendants, and returnable to the September term, 1909, of the court, immediately followed. With respect to the form and substance of the order and its publication the provisions of Sections 575 and 580, Revised Statutes 1899, then in force, were substantially complied with. At the return term a judgment was rendered in the cause. According to its recitals: none of the defendants appeared but all made default; a hearing was had; "and upon the evidence adduced by the plaintiffs" the court found generally that the plaintiffs were the absolute owners in fee simple of the land described in the petition, and specifically that "the unknown wife or widow and the unknown heirs, the unknown descendants, the unknown devisees and the unknown assigns of Minitree Catron . . . each and all of them have no title, interest or estate in said land or any part thereof." The judgment concluded:

"And the court doth further adjudge and decree that the defendants and each of them be estopped and debarred from ever setting up or claiming title, interest, or estate in or to said land or to any part thereof."

On the 17th day of September, 1917, a motion was filed in the cause to vacate the judgment, the movents being the surviving children and the heirs of the deceased children of Frances Eveline McFadin, who died in 1916. After an extended hearing in the circuit court the motion was overruled. An appeal taken from the order overruling the motion resulted in an affirmance by this court. [Simms v. Thompson, supra.]

This suit was commenced February 4, 1922. The plaintiffs are the same persons who were the movents in the motion to vacate the judgment in the suit to quiet title; the defendants are the heirs of Mary A. Simms, and James L. Wilson and Henry Lee Wilson to whom they sold and conveyed the land in question in 1911.

The petition is in five counts. The first seeks to have the judgment in Simms v. Thompson, set aside on the ground of fraud in its procurement. It is quite voluminous, but the substance of it is set forth in the following excerpts therefrom:

"Plaintiffs state that the said judgment to quiet title is fraudulent and void and subject to be avoided in this action; because the several charges and allegations in the defendants' petition and the said oath of the defendant John W. Simms verifying the same, and the evidence adduced at the hearing, attaching to the judgment itself, are false and fraudulent in the following particulars: that the allegation that the devisees of Minitree Catron were non-residents of the State of Missouri and unknown to the defendants, was false and made to defraud the court into assuming jurisdiction, whereas said devisees at all times resided in the State of Missouri, and were known to the defendants herein; the allegation that the plaintiffs (defendants herein) were owners in fee of the said lands was false and by them known to be false for they owned only the right to possession and lawful use of the lands during the life of Frances Eveline McFadin, and said affidavit so made and attached to said petition to verify the allegations thereof by John W. Simms was false and untrue and unto him known to be false and untrue at the time he made and subscribed it."

The second count alleges that if Section 650, Revised Statutes 1899, which purports merely to provide a remedy for quieting title, authorizes the divestment of a remainder in real estate vested at the time of its enactment, it is to that extent unconstitutional. The third count charges that the judgment rendered in the suit to quiet title is void because the petition therein was not verified in accordance with the requirements of Section 580, Revised Statutes 1899. The fourth asks that the title to the land in controversy be ascertained and determined in accordance with the plaintiffs' contention. The fifth is plain ejectment.

The answers of the defendants put in issue the allegations of the petition; aver that the judgment in Simms v. Thompson is valid and conclusive in respect to all matters adjudicated therein; and in addition plead in bar several of the statutes of limitation.

A jury was waived. The court after hearing the evidence found for the defendants on all of the issues. From the judgment rendered in conformity with such finding plaintiffs prosecute this appeal. Additional facts will be stated in connection with the question considered.

Questions raised on this appeal and not considered in Simms v. Thompson, supra, relate: (1) to the verification of the petition in that case; (2) to the operation of the judgment therein as impairing vested rights in violation of constitutional provisions; (3) to fraud in the procurement of such judgment; and (4) to the effect of the judgment as an estoppel. Of these in order.

I. Section 580, Revised Statutes 1899, authorizing publication against unknown parties and in force at the time of the commencement of the suit of Simms v. Thompson, provides: "If any plaintiff shall allege in his petition, under oath, that there are, or that he believes there are persons interested in the subject-matter of the petition, whose names he cannot insert therein because they are unkonwn to him, and shall describe the interest of such persons and how derived, so far as his knowledge extends, the court, or the judge or clerk thereof, shall make an order," etc. The word "plaintiff" is, as appellants contend, unquestionably used in a collective sense, it includes all who by the record prosecute the action; and "any plaintiff" means the plaintiff in any case. As applied to a particular case in which there are more than one plaintiff the section should therefore be construed to read: "If the plaintiffs, under oath," etc. From this premise, which we think must be conceded, appellants draw the conclusion that the statute requires the petition in such case to be verified by the oath of each of the plaintiffs. In

*Affidavit: By One Plaintiff.*

support of their position they cite some early Kentucky cases, the last of which was decided in 1838, and a Wisconsin case decided in 1862. These cases hold in effect that such a construction is necessary to prevent fraud; that where there are several plaintiffs, all of them, except the one who makes the affidavit, may know the persons against whom they are attempting to proceed as unknown. But it is obvious that under our code, if in such circumstances a fraud be intended, those of the plaintiffs to whom the proposed defendant is known can decline to become parties plaintiff, and the one to whom such defendant is unknown can join those who would otherwise be plaintiffs with the unknown as defendants and make the statutory affidavit without a single qualm of conscience. We have traveled a long way since the Kentucky and Wisconsin cases were decided. In recent years there has been a disposition on the part of state legislatures everywhere to simplify the procedure, so far as possible within constitutional limitations, whereby titles to real estate can be stabilized and rendered marketable through the removal of clouds and lurking defects. The statute under review has been so amended that the petition, in order to authorize publication against an unknown defendant, may now be verified by the affidavit of plaintiff, "or his agent or attorney." This trend of the legislative mind has been invoked merely as an aid to construction; there has been no recession on the part of the courts with respect to the enforcement of the rule which requires that a statute which provides a method of bringing a defendant into court otherwise than by personal service shall be strictly construed.

In the case under consideration John W. Simms, one of the plaintiffs, verified by his oath the allegations of the petition, including the allegation that the heirs, devisees and assigns of Minitree Catron were unknown to the plaintiffs, that is, to himself, and to each of his co-plaintiffs. This was a substantially accurate compliance with the requirement that the allegations of the petition

be made under oath. If the Legislature had intended that in cases where there are more than one plaintiff the conscience of each should be sifted through the medium of an oath, it would doubtlessly have said so. The Supreme Court of Nebraska in construing a similar statute of that State under circumstances very like those present in the case under consideration, held that the verification of the petition by one plaintiff was sufficient. [Stull v. Masilonka, 104 N. W. 188; Same case, 108 N. W. 166.] That such a verification is sufficient under our own statute is the view which has prevailed generally with the trial courts and the bar of the State. To now hold otherwise would result in unsettling many titles. A construction that would so result ought not be adopted unless imperatively required by the language of the statute, and we hold that it does not.

II. In challenging the constitutionality of Section 650, Revised Statutes 1899, under which the Simms heirs instituted the proceeding to quiet title, appellants say:

"If said act is to be construed so as to authorize the divesting of the vested estates of the plaintiffs as remaindermen created by the will of Minitree Catron in the year 1862 and transfer the same to the grantees of the life tenant several years before the death of said life tenant and without any conveyance thereof by such remaindermen, then said Section 650 is unconstitutional as violative of Section 15 of Article 2 of the Constitution of the State of Missouri."

Constitutional Statute.

The statute authorized the circuit court, its provisions having been complied with, "to ascertain and determine the estate, title and interest of said parties, respectively, in such real estate and to define and adjudge by its judgment or decree the title, estate and interest of the parties severally in and to such real property." And that is what the court did in Simms v. Thompson, that and nothing more. "Upon the evidence adduced by the plaintiffs" it found and adjudged that

plaintiffs in that suit were the owners of the land "absolutely and in fee simple and that neither the defendants nor any of them had any title, interest or estate in and to said land or any part thereof." The judgment did not invest plaintiffs with a new title; it merely determined what title they then had. If the defendants (in that proceeding) had appeared in response to the statutory notice given them and offered proof of the title they now claim, the finding and judgment of the court might have been different. They are estopped to now assert that they had or have title as remaindermen under the will of Minitree Catron, deceased. The contention that the statute is unconstitutional can not be regarded seriously. [Arndt v. Griggs, 134 U. S. 316; Hamilton v. Brown, 161 U. S. 256; Tyler v. Court of Registration, 175 Mass. 71; Ashton-Jenkins Co. v. Bramel, 192 Pac. 375; Drake v. Fraser, 179 N. W. 393.] But even if it were open to question on constitutional grounds, the consideration of such question for all the purposes of this case would be foreclosed by the judgment in the former suit. [Forest Lumber Co. v. Mining Co., 222 S. W. 398.]

III. A judgment will not be set aside upon a mere surmise or suspicion of fraud, or for mere technical fraud, but only for actual and positive fraud in fact, established by clear, strong and cogent evidence, leaving Fraud. no reasonable doubt of its existence. [Lieber v. Lieber, 239 Mo. 1, 39; McDonald v. McDaniel, 242 Mo. 172, 176 and cases cited; Giddings v. Steele, 28 Tex. 732.]

The gist of the fraud alleged is that the defendants as plaintiffs in the suit to quiet title, well knowing that the defendants therein (plaintiffs herein) were residents of Lafayette County, Missouri, and well knowing their rights, title and interest in the land in question, for the purpose of having process so served as to avoid giving them actual notice and thereby purposely keep them in ignorance of the suit and deprive them of an opportunity to appear and make defense therein, falsely alleged

under oath that the names of the heirs, devisees and assigns of Minitree Catron, and the nature or character of the title, interest and estate which they claimed in the land were unknown to them. The charge was wholly unproved. There is not a particle of evidence in the record which tends to show that any of the Simms heirs, or their attorney who brought the suit to quiet title, knew of the existence of the Catron will, much less of the names and whereabouts of the persons named therein as devisees. The only information they had with respect to the title to their lands, and possible claimants, was what the abstract disclosed. That showed merely that one Minitree Catron, back in 1838, purchased the land from the Government through the land office at Lexington, Missouri, and received patents therefor; but who Catron was or where he at the time resided was in no way revealed. It further appeared from the abstract that in 1865 one John McFadin of Lafayette County, Missouri, gave Edward Hamill a bond for a deed and that in 1867 John McFadin and his wife, Frances Eveline, of Lafayette County, executed a deed to the lands to Mary A. Simms, and this was all the information that the Simms heirs had relative to the McFadins when they set about to cure the record defects in their title. They had never known or heard of the McFadins otherwise; had had no intimation of any kind of their relation to Catron. Was it incumbent upon them in 1909 to go to Lafayette County in search of John McFadin, who had there more than forty years before made their mother a deed, in order to inquire of him the source of the title he purported to convey by the deed? During all the years that the Simms had been in possession of the land no adverse claimant had appeared; there had been no suggestion from any source that their ownership was otherwise than absolute. They had every reason to believe that the breaks in the chain of their record title were but formal defects resulting from the loss of a deed or deeds, or failure to record them.

Frances Eveline McFadin lived in Lafayette County

continuously from the time she joined in the deed to Mary A. Simms until her death; her children grew up there and continued to reside there; all were socially prominent and well known locally. But an inference unfavorable to defendants cannot be drawn from those facts. Though Carroll and Lafayette counties adjoin, owing to the Missouri River which separates them there was no more communication between them than if they had lain in parts of the State remote from each other. And it is no more strange that the Simms knew nothing of the McFadins than that the McFadins had never heard of the Simms and did not know that they occupied the land in which they (the McFadins) now claim they were all the while the owners of the remainder in fee.

Appellants say that the probate of the Catron will in Lafayette County was a proceeding *in rem* and that the judgment therein gave notice to the world of the existence and contents of the will. But the doctrine of constructive notice is wholly without application here. To support the charge of fraud in this case it must be shown that the Simms heirs had actual knowledge of the will, or of such facts as would have suggested its probable existence and put a man of ordinary diligence upon inquiry. [Shanklin v. Ward, 291 Mo. 1, 18.] The proof fails to show that they had any such knowledge.

IV. Appellants assert that they are not concluded by the judgment in Simms v. Thompson, because that judgment was not rendered on the merits, in this, that the Catron will under which they claim title was not brought to the attention of the court and consequently could not have been considered by it. But the contention that the judgment was not on the merits is obviously unsound. The petition alleged, and the court from the evidence offered on the hearing found, that the plaintiffs were the owners in fee simple of the land and that the defendants had no rights, title or interest of any kind or character therein. Although appellants' claims as remaindermen may not have been presented to the court

and although no specific finding was made with respect to such claims, the judgment is none the less binding upon them. "If the determination of a question is necessarily involved in the judgment, it is immaterial whether it was actually litigated or not." [1 Freeman on Judgment (4 Ed.) sec. 272.] "The judgment, so long as it stands, imports absolute verity as to every proposition of law and fact essential to its existence against all parties to it, and every proposition assumed or decided by the court leading up to the final conclusion and upon which such conclusion is based is as effectually passed upon as the ultimate question which is finally solved." [15 R. C. L. 977; State ex rel. v. McDonald, 108 Wis. 8.] The causes of action pleaded in the fourth and fifth counts of the petition are therefore *res adjudicata.*

In their brief appellants have quoted extensively from authorities dealing with the *quasi-*trust relation existing between life tenants and remaindermen as a basis for their contention that whatever title the Simms heirs acquired under the judgment in Simms v. Thompson inured to those who under the will of Minitree Catron took as remaindermen. But the argument overlooks the patent fact that by such judgment it was finally determined with respect to the land in question that there were neither life tenants nor remaindermen, but that the Simms heirs were the owners of the entire fee.

The conclusions we have reached supra render it unnecessary to determine whether the causes of action pleaded in the petition are barred by the several statutes of limitation pleaded, or any of them.

The judgment of the circuit court is affirmed. All concur.